1  WILSON TURNER KOSMO LLP
   FREDERICK W. KOSMO, JR. (138036)
2  HUBERT KIM (204957)
   550 West C Street, Suite 1050
3  San Diego, California 92101
   Telephone: (619) 236-9600
4  Facsimile: (619) 236-9669
   E-mail: fkosmo@wilsonturnerkosmo.com
5  E-mail: hkim@wilsonturnerkosmo.com

6  Attorneys for Plaintiff
   NATURAL ALTERNATIVES
7  INTERNATIONAL, INC.

8

9            UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11

12  NATURAL ALTERNATIVES        Case No. '15CV2081 JM   RBB
    INTERNATIONAL, INC.,
13                              COMPLAINT FOR
          Plaintiff,           1) LANHAM ACT § 43(A)
14                             2) UNFAIR COMPETITION LAW
          v.                   3) FALSE ADVERTISING LAW
15                             4) TRADE LIBEL AND BUSINESS
    CREATIVE COMPOUNDS INC.,       DISPARAGEMENT
16                             5) TORTIOUS INTERFERENCE
          Defendant.              WITH PROSPECTIVE ECONOMIC
17                                ADVANTAGE

18                              DEMAND FOR JURY TRIAL

19

20        Natural Alternatives International, Inc. ("NAI" or "Plaintiff") hereby brings this

21  Complaint against Creative Compounds, Inc. ("Creative") and alleges as follows:

22                              **INTRODUCTION**

23        1.    NAI sells its branded CarnoSyn® beta-alanine, an amino acid, to

24  customers throughout the United States and in other countries. NAI's product is

25  covered by a robust portfolio of patent and trademark rights. Creative, which sells

26  generic beta-alanine, has engaged in acts of unfair competition, false advertising, trade

27  libel and product disparagement, and intentional interference with NAI's business, all

28  designed to improperly boost its sales and intentionally interfere with NAI's

                              -1-              Case No. _____
                              COMPLAINT

expanding CarnoSyn® business. On or about September 5, 2015, Creative sent an internet communication to customers and potential customers of beta-alanine, as well as competitors, making numerous false and misleading statements regarding Creative's own generic beta-alanine, NAI, CarnoSyn® beta-alanine, and NAI's intellectual property rights. NAI files this action to stop Creative from intentionally and improperly trying to mislead NAI's actual and potential customers and wrongfully interfering with NAI's CarnoSyn® beta-alanine business.

## PARTIES

2.     NAI is a Delaware corporation with its principal place of business in San Marcos, California.

3.     Creative is a Nevada corporation with its principal place of business located at 600 Daugherty, Scott City, Missouri 63780.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, and 15 U.S.C. § 1121(a) because this is an action for violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Cal. Business and Professions Code §§ 17200, *et seq.*, and Cal. Business and Professions Code §§ 17500, *et seq.*

5.     The exercise of jurisdiction over Creative comports with the laws of the State of California and the constitutional requirements of due process because Creative transacts business and/or offers to transact business within California. It has sent one or more communications at issue to recipients in this State. Creative has had communications with at least one NAI customer located in California regarding Creative's generic beta-alanine product. Creative has imported beta-alanine into at least one California port. *See, e.g.*, Ex. A. Creative also maintains an interactive website through which residents of California and other states can communicate with the company.

6.     Venue is proper in this District under 28 U.S.C. § 1391.

-2-                    Case No. _____
COMPLAINT

# FACTS

**A.  NAI**

7.    NAI, a publicly traded company, is a leading formulator, manufacturer, marketer and supplier of nutritional supplements and provides strategic partnering services to its customers. NAI offers a wide range of innovative nutritional products and services to its clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance. NAI also funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives. The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

8.    NAI owns 34 patents in the United States and foreign countries related to beta-alanine. Beta-alanine is a non-essential amino acid. In numerous scientific studies, CarnoSyn® beta-alanine, when used as a dietary supplement, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance. One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been recognized for his work in nutritional supplements, particularly his work in several studies using CarnoSyn® beta-alanine. He has a lifetime achieve award from the International Society of Sports Nutrition. NAI sells beta-alanine to customers in the United States engaged in interstate and foreign commerce. Its beta-alanine is branded and sold under the trademark CarnoSyn®. NAI also owns the entire right, title and interest to multiple trademarks, including the CarnoSyn® trademark, Serial No. 78372235 and Registration No. 3146289, and the Carnosyn Beta Alanine® trademark, Serial No. 85606462 and Registration No. 4271217.

9.      NAI has invested and continues to expend substantial funds to build, expand and promote  sales of CarnoSyn® beta-alanine. NAI pursues legal avenues to protect its CarnoSyn® brand and intellectual property portfolio.

10.      NAI maintains a website that to promote and encourage sales of its branded beta-alanine at www.carnosyn.com, the content of which is incorporated herein by reference.

11.      In 2015, NAI will attend trade shows and conferences to promote CarnoSyn® beta-alanine, including the Olympia Fitness & Performance Weekend on September 17-20, 2015 in Las Vegas, Nevada, and Supply Side West on October 5-9, 2015 in Las Vegas.

12.      When NAI sells CarnoSyn® beta-alanine to customers, the customers receive a scientifically-tested recognized product, a license to NAI's trademarks and patents, and are indemnified against product liability. The license extends only to the CarnoSyn® beta-alanine purchased from NAI, and does not extend to CarnoSyn® beta-alanine that contains or is mixed or comingled with any non-trademarked beta-alanine.

13.      By statute, NAI's 14 U.S. patents are presumed valid. 35 U.S.C. § 282. None of those patents have been held invalid by a court.

**B.      Creative Compounds**

14.      Creative is a global importer, supplier and distributor of raw ingredients to customers in the nutritional supplement, food, and beverage industries.

15.      Creative supplies beta-alanine to nutritional supplement contract manufacturers, formulators and distributors in the United States. Its products and services are offered to and may be purchased and/or used by citizens of California. Creative owns, maintains and/or operates a website at www.creativecompounds.com, the content of which is incorporated herein by reference.

16.      Creative began importing beta-alanine into the United States as early as 2007. *See, e.g.*, Ex. 1.

-4-                     Case No. _____

COMPLAINT

17.    Creative has offered to sell or sold and continues to offer to sell and sell non-branded beta-alanine to dietary supplement manufacturers and customers in the United States in interstate commerce.

18.    NAI and Creative are direct competitors in the market for beta-alanine in the United States.

19.    Customers of Creative's generic beta-alanine receive a product that is not covered by any NAI patent or trademark license, and no indemnification against product liability for the trademarked beta-alanine.

C.    **Creative's September 2015 False and Misleading Statements**

20.    On or about September 5, 2015, Creative sent a widely distributed blast email to the market that included customers and competitors of NAI, including customers that purchased or potentially would purchase beta-alanine from NAI.

21.    The blast email stated the following:

If you or your customers have previously requested or required the trademarked Beta Alanine, we would like you to know that Creative Compounds is now offering Beta Alanine for sale at a significant cost savings versus our competitors.  In the past, others have avoided selling Beta Alanine and prices have been kept high by patents owned by Natural Alternatives International, Inc. ("NAI").

We have reviewed ten patents owned by NAI and have discovered that NAI appears to have admitted that three of the patents are invalid, as construed by a court in Delaware in 2011.  NAI has never again sued another party on these three patents after the Delaware case.

NAI has also sued Woodbolt Distribution in Texas for infringement of three other patents. However, Woodbolt filed for reexamination of two of the NAI patents initially involved in the suit, and patent examiner has held that the claims that cover Beta Alanine compositions in those patents (as opposed to claims covering methods of

COMPLAINT

1    using Beta Alanine) are invalid.  NAI has appealed, but in order to

2    succeed, NAI will have to prove that each of multiple alternative bases

3    for invalidity reached by the patent examiner are incorrect.

4            We have reviewed this issue in depth and are confident enough in

5    our conclusions to begin sourcing Beta Alanine.  If you have any

6    questions, or would like to realize a significant cost savings on Beta

7    Alanine by sourcing it from Creative, please contact me at your earliest

8    convenience.

9        22.    This email, made by Creative, was widely distributed and is materially

10   false and misleading for at least the following reasons:

11   a.    Creative states that it can offer the trademarked beta-alanine to customers

12         "at a significant cost savings versus our competitors." Creative's

13         misleading statement is intended to unfairly compete and tortuously

14         interfere with NAI's business relationships and prospective economic

15         advantage.

16   b.    Creative's email indicates that NAI has unlawfully used its patents to

17         keep prices of the trademarked beta-alanine high. This statement is false

18         and misleading. Creative's allegation that NAI has engaged in unlawful

19         conduct by using its patents to exert market power and increase prices

20         constitutes an assertion that NAI is engaged in patent misuse, a violation

21         of antitrust laws, and is trade libel and business disparagement.

22   c.    To the extent Creative's email suggests that NAI has kept prices for

23         generic beta-alanine high, this statement is false. NAI has no control over

24         the sales prices for generic, non-trademarked beta-alanine.

25   d.    Creative's statement that there are "ten patents owned by NAI" is false

26         and misleading. NAI owns 14 U.S. patents and 20 foreign patents related

27         to beta-alanine. *See* www.carnosyn.com/patents.

28

e.  Creative's email states "NAI appears to have admitted that three of the patents are invalid, as construed by a court in Delaware in 2011." This is false and misleading. The three referenced patents have not been held to be invalid by any court of competent jurisdiction. As alleged above, these patents are presumed valid.

f.  One of the defendants in the referenced case, DNP International Co., Inc., issued a press release dated July 30, 2014 admitting that NAI's U.S. Patent No. 8,067,381 ("the '381 patent") has not been found invalid by a final decision of any court or the U.S. Patent and Trademark Office." Ex. B. DNP also agreed, as part of a litigation settlement with NAI, to self enjoin and exit the business of selling beta-alanine. *Id.*

g.  Creative states, with reference to two NAI patents submitted for reexamination before the United States Patent and Trademark Office ("USPTO"), that in order to succeed on appeal, "NAI will have to prove that each of multiple alternative bases for invalidity reached by the patent examiner are incorrect." This statement is false. The USPTO's Patent and Trademark Appeals Board ("PTAB") issued a decision in the reexamination of the '381 patent, reversing the examiner in part.  In particular, claims 5-14 of the '381 patent currently stand rejected under only a single basis for invalidity, not "multiple alternative bases for invalidity" as stated by Creative.  To succeed on appeal, NAI only needs to prove the patent examiner was incorrect on a single basis for claims 5-14 of the '381 patent. The reexamination of the '381 patent is currently being reconsidered by the PTAB. Thus, the PTAB's decision is not final and could be subject to further review by the U.S. Court of Appeals for the Federal Circuit.

**D.      Results of Creative's Wrongful Conduct**

23.     Creative's blast email communication has disparaged and diminished the business of NAI and caused confusion in the marketplace for beta-alanine, specifically CarnoSyn™ beta-alanine, in the United States.

24.     NAI has received and had to respond to inquiries from customers and others about Creative's false and misleading statements made in September 2015. By way of example, and not limitation, (a) a third-party alerted NAI of the false and misleading communication; and (b) one or more customers wrote to NAI inquiring as to the veracity of the false and misleading communication.

25.     Creative's false and misleading statements have adversely affected the ability of NAI to compete and have detracted from its reputation or goodwill in a fashion that benefitted Creative. NAI's customers were aware of Creative's statements when they were made and were influenced by them to buy beta-alanine from Creative or NAI's other competitors, rather than NAI. Creative's statements had direct effects on NAI and the beta-alanine market in which it participates.

26.     Creative's deceptions were material and likely to influence purchasing decisions. Purchasers made decisions that were or may have been influenced by Creative's statements that it could provide trademarked beta-alanine at "significant cost savings", that certain NAI patents were found to be invalid, and that NAI has a greater burden to prove validity of certain patents on appeal at the USPTO. Creative certainly made its statements to the market for the purpose of influencing purchase decisions.

27.     U.S. customers for beta-alanine products would read Creative's statements and would likely be confused as to the nature of NAI's products and buy their beta-alanine from Creative. NAI's customers were likely aware of the statements and influenced by them to buy Creative's beta-alanine instead of NAI's CarnoSyn® beta-alanine.

28.   Sales of beta-alanine made by Creative as a result of its false and misleading statements cause NAI to lose sales, in an amount to be proven at trial.

29.   The documents referred to herein are incorporated by reference.

## COUNT I

### (Lanham Act § 43(a))

30.   The foregoing allegations are incorporated by reference.

31.   Creative's products are used, sold, and/or offered for sale in interstate and foreign commerce.

32.   In connection with its goods or services, Creative has used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact, which are in commercial advertising or promotion (including without limitation its website, promotional materials, emails and in trade publications), and Creative misrepresents the nature, characteristics, qualities, or geographic origin of its or plaintiff's goods, services, or commercial activities.

33.   Creative knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

34.   Creative's commercial messages and statements are either literally false or literally true but ambiguous and have the tendency to deceive the market, the public, consumers, potential consumers and competitors of NAI.

35.   Creative's misrepresentations were material and made in bad faith for the purpose of deceiving the market, the public, consumers, potential consumers and competitors of NAI and harming its competition, including plaintiff.

36.   The misrepresentations deceive or are likely to deceive the market, the public, consumers, potential consumers and competitors of NAI and Creative's products. Further, the misrepresentations are likely to influence the purchasing decisions of others and have caused injury or are likely to do so.

1   37.   By reason of Creative's statements and conduct, Creative has willfully

2   violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and NAI has suffered,

3   and will continue to suffer damage to its business, reputation, and good will and has

4   lost sales and profits that it would have made but for Creative's acts.

5   38.   NAI has been irreparably harmed by Creative's acts in violation of the

6   Lanham Act and has suffered damages in an amount to be determined at trial.

7   **COUNT II**

8   **(California Unfair Competition Law)**

9   39.   The foregoing allegations are incorporated by reference.

10   40.   In connection with its September 2015 misrepresentations alleged above,

11   Creative has knowingly made false and misleading statements and has omitted

12   statements of material fact to the public in violation of section 43(a) of the Lanham

13   Act and section 5 of the Federal Trade Commission Act.

14   41.   At all relevant times, California's Unfair Competition Law ("UCL"),

15   Business and Professions Code § 17200, *et seq.*, was in full force and effect and

16   applicable to Creative, a corporation doing business in and directing activities to

17   California, which made false and misleading statements about NAI, a California

18   corporation.

19   42.   Creative violated the UCL by engaging in unlawful, unfair and/or

20   fraudulent business acts or practices by engaging in the conduct alleged above.

21   43.   NAI has been personally aggrieved by Creative's unlawful business acts

22   and practices as alleged herein, including but not necessarily limited to the loss of

23   money or property.

24   44.   Creative should be preliminarily and permanently enjoined from further

25   violation of the law.

26   45.   As a result of the UCL violation, Creative should be ordered to disgorge

27   the profits they received as the result of their conduct, in an amount to be proven at

28   trial.

-10-                    Case No. _____
COMPLAINT

## COUNT III

### (California False Advertising Law)

46.     The foregoing allegations are incorporated by reference.

47.     In connection with its September 2015 misrepresentations alleged above, Creative has made statements in its advertising that are false and misleading. Creative knew or by the exercise of reasonable care should have known that the statements were false and misleading.

48.     At all relevant times, California's False Advertising Law, Business and Professions Code § 17500, *et seq.*, was in full force and effect and applicable to Creative, a corporation doing business in and directing activities to California, which made false and misleading statements about NAI, a California corporation.

49.     Creative violated the False Advertising Law by engaging in the conduct alleged above.

50.     Members of the public were or are likely to be deceived by Creative's false and misleading statements.

51.     Creative should be preliminarily and permanently enjoined from making further false and misleading statements and should make corrective disclosures. Without such injunctive relief, the unlawful conduct by Creative is likely to continue, particularly since it has repeatedly made the same false and misleading statements.

## COUNT IV

### (Trade Libel and Business Disparagement)

52.     The foregoing allegations are incorporated by reference.

53.     In connection with its September 2015 misrepresentations alleged above, Creative has knowingly made false and disparaging statements in internet communications about NAI's CarnoSyn® beta-alanine.

54.     Creative knew or by the exercise of reasonable care should have known that the statements were false.

55. Creative's conduct was intentional, malicious, and willful and was done with knowledge that harm would inevitably result.

56. As a direct and proximate result of the Creative's disparaging statements, NAI has been irreparably harmed, and, if not enjoined, NAI will continue to suffer irreparable harm and damages to its business, reputation, and goodwill. Creative's misrepresentations to current and potential NAI customers of are already limiting NAI's business effectiveness in relation to the annual nutraceutical and dietary supplement conferences (Olympia Fitness & Performance Weekend and Supply Side West), where NAI garners significant business relationships each year based in significant part on its CarnoSyn® beta-alanine product. These misrepresentations caused and continue to cause special damages relating to current and potential customers believing the misrepresentations and preventing NAI from forming relationships prior to, during and after the referenced conferences and other events, thereby rendering NAI's current marketing efforts and expenditures moot for this significant annual affair. NAI is also suffering monetary damage in an amount to be proven at trial.

## Count V

### (Intentional Interference with Prospective Economic Advantage)

57. The foregoing allegations are incorporated by reference.

58. NAI has economic relationships with its customers, through the licensing and supply of its CarnoSyn® beta-alanine product throughout the United States.

59. In connection with its September 2015 misrepresentations alleged above, Creative has knowingly and intentionally made false and misleading statements designed to disrupt NAI's economic relationships with its customers and induce NAI's prospective branded beta-alanine customers to not do business with it.

60. The misrepresentations have influenced the purchasing decisions of customers and potential customers and have caused NAI to suffer damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

NAI respectfully requests that this Court enter judgment against Creative and that the following relief be granted:

a.  judgment that Creative has violated the Lanham Act section 43(a);

b.  treble damages and statutory damages;

c.  a preliminary and permanent injunction against continued violations of the Lanham Act and California's UCL and False Advertising Law, including enjoining further false and misleading statements and corrective disclosures;

d.  judgment that Creative has violated California's law of deceptive trade practices;

e.  disgorgement of profit under the UCL;

f.  judgment that Creative committed trade libel and business disparagement and tortious interference with prospective economic relationships;

g.  punitive damages allowed by law;

h.  attorneys' fees as allowed by law, including without limitation, 15 U.S.C. § 1117(a);

///
///
///
///
///
///
///
///
///
///
///

-13-                          Case No. _____

COMPLAINT

1        i.     costs pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law; and

2        j.     such other relief as the Court deems just and appropriate under the

3            circumstances.

4                            **JURY DEMAND**

5     NAI hereby demands a jury trial on all issues so triable.

6

7   Dated:    September 18. 2015        **WILSON TURNER KOSMO LLP**

8

9                          By:    s/ Frederick W. Kosmo, Jr.
                                       FREDERICK W. KOSMO, JR.

10                                        fkosmo@wilsonturnerkosmo.com

11                                     Attorney for Plaintiff
                                       NATURAL ALTERNATIVES
                                       INTERNATIONAL. INC.

12

13   **Of Counsel:**

14   Kevin M. Bell

15   Richard J. Oparil

16   W. John McKeague

17   Caroline M. Maxell

18   Porzio, Bromberg & Newman, P.C.

19   1200 New Hampshire Ave., NW

20   Washington, DC 20036

21   (202) 517-1888

22   (202) 517-6322 (fax)

23

24

25

26

27

28

# TABLE OF CONTENTS

| EX. NO. | DESCRIPTION | PAGES |
|---------|-------------|-------|
| A | Creative has imported beta-alanine into California. | 16 - 21 |
| B | DNP International Co., Inc. issued press release dated July 30, 2014. | 22 - 23 |