UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Natural Alternatives Int'l, Inc.,<br><br>                             Plaintiff,<br><br>v.<br><br>Creative Compounds, Inc.,<br><br>                             Defendant. | Case No.: 15-cv-02081-JM-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING NAI'S MOTION FOR A PROTECTIVE ORDER [Doc. 49];**<br><br>**(2) GRANTING IN PART AND DENYING IN PART CREATIVE COMPOUNDS, INC.'S MOTION FOR A PROTECTIVE ORDER [Doc. 54];**<br><br>**(3) GRANTING IN PART AND DENYING IN PART NAI'S MOTION TO COMPEL DISCOVERY RESPONSES [Doc. 82]; AND**<br><br>**(4) MODIFYING SCHEDULING ORDER** |

      Defendant, an ingredient supplier, sent potential customers a "blast email" that cast doubt on plaintiff's patents for a brand-name workout supplement, while offering to sell its own generic version of that supplement at a significantly lower price. After filing suit,

1

plaintiff Natural Alternatives International, Inc., argued that the "blast email" waived the attorney-client privilege by publicly exposing otherwise confidential legal communications. Now before the Court are various motions relating to NAI's efforts to depose opposing counsel (and his law firm) and to compel the production of emails that NAI alleges have lost their privileged status.

## I. BACKGROUND

Defendant Creative Compounds, Inc., sent its fateful "blast email" to potential buyers of the workout supplement beta-alanine, including some of plaintiff NAI's customers. In the email's text, set out in full below, Creative suggested that NAI's branded CarnoSyn® beta-alanine patents were invalid and that consumers may now purchase generic beta-alanine from Creative at great savings:

> If you or your customers have previously requested or required the trademarked Beta Alanine, we would like you to know that Creative Compounds is now offering Beta Alanine for sale at a significant cost savings versus our competitors. In the past, others have avoided selling Beta Alanine and prices have been kept high by patents owned by Natural Alternatives International, Inc. ("NAI").
>
> We have reviewed ten patents owned by NAI and have discovered that NAI appears to have admitted that three of the patents are invalid, as construed by a court in Delaware in 2011. NAI has never again sued another party on these three patents after the Delaware case.
>
> NAI has also sued Woodbolt Distribution in Texas for infringement of three other patents. However, Woodbolt filed for reexamination of two of the NAI patents initially involved in the suit, and [the] patent examiner has held that the claims that cover Beta Alanine compositions in those patents (as opposed to claims covering methods of using Beta Alanine) are invalid. NAI has appealed, but in order to succeed, NAI will have to prove that each of multiple alternative bases for invalidity reached by the patent examiner are incorrect.
>
> We have reviewed this issue in depth and are confident enough in our conclusions to begin sourcing Beta Alanine. If you have any questions, or would like to realize a significant cost savings on Beta Alanine by sourcing it from Creative, please contact me at your earliest convenience.

NAI alleges that this email violates the Lanham Act, California Unfair Competition Law, and California False Advertising Law, as well as being trade libel and intentional interference with a prospective economic advantage under California common law. NAI also claims that Creative's current litigation counsel, Nelson Nolte, consulted in drafting this mass email, and that the email itself waives the attorney-client privilege as to Creative's patent analysis.

Creative now seeks a protective order to prevent NAI from deposing attorney Nolte and the Nolte Law Firm. In its papers and in court, NAI stated that it wished to ask Nolte about his patent investigation and his communications with Creative concerning NAI's patents. Unsurprisingly, Creative asserts that the information sought is privileged.[1]

In a related issue, NAI moves to compel discovery responses concerning emails that Creative designated as privileged, including over one hundred emails sent or received by Creative's consultant Derek Cornelius as well as a single email between Creative and another company, NuCare Pharmaceuticals. As with Nolte's deposition, NAI asserts that the emails are subject to disclosure because, among other things, Creative waived the privilege by sending out the above email.

---

[1] At a November 21, 2016 hearing, Creative argued that in deciding the Nolte deposition issue, this Court should consider the fact that Creative might raise an advice-of-counsel defense in the future. The Court notes that Creative pleaded no such defense in the answer, the time to amend pleadings has long since passed, and Creative never requested an opportunity to amend its pleadings to include that defense. Thus, the Court will proceed as though Creative is not intending to make the advice of its attorneys a component of its litigation strategy, but will revisit this issue should Creative later assert such an argument.

## II. DISCUSSION

### A. Creative's Motion for a Protective Order as to the Deposition of Nelson Nolte and the Nolte Law Firm

The taking of attorney depositions in this district is controlled by the so-called *Shelton* test, which was first set out in *Shelton v. American Motor Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). Although the Ninth Circuit has not yet explicitly adopted it, our district has routinely applied the test to situations where, as here, a party seeks to take the deposition of opposing counsel concerning the instant litigation. *See Textron Fin. Corp. v. Gallegos*, No. 15cv1678-LAB (DHB), 2016 WL 4169128, at *2 (S.D. Cal. Aug. 5, 2016) ("*Shelton* is generally considered the leading authority, and has been adopted in this district.").

In *Shelton*, the Eighth Circuit described the many policy reasons that militate against allowing depositions of opposing counsel, including disrupting the adversarial system, lowering the standards of the profession, chilling attorney-client communications, adding to the "already burdensome time and costs of litigation," and providing an unfair glimpse into the opponent's litigation strategy. 805 F.2d at 1327. Nevertheless, *Shelton* held that an opposing attorney's deposition might be warranted in the "limited circumstances" in which the proponent of the deposition showed:

1. "no other means exist to obtain the information than to depose opposing counsel;"
2. "the information sought is relevant and nonprivileged;" and
3. "the information is crucial to the preparation of the case."

805 F.2d at 1327 (citations omitted).

NAI focuses its argument primarily on whether the information it wishes to obtain from Nolte is privileged, but that addresses only one of these three prongs. Setting aside the privilege issues (addressed below) and whether other means exist to glean the information, NAI has not shown how deposing the opposing legal team is crucial to its case. NAI argues that it wants to know the steps Nolte took in investigating and making

4

the legal conclusions and opinions set out in the email. That information would certainly be relevant to some of NAI's claims. But NAI does not explain, and this Court's own research has not disclosed, how that information would be critical to any element of any of its causes of action or would be necessary to clear up any critical factual issues left unresolved by other discovery avenues. Thus, the Court concludes that NAI has not met its burden under *Shelton* and grants Creative's motion for a protective order as to that issue.

### B. NAI's Motion to Compel Document Disclosures

In NAI's motion to compel document disclosures, it seeks the production of 102 emails sent or received by consultant Derek Cornelius, plus one additional email from a Creative employee to a NuCare employee. In a privilege log, Creative disclosed the existence of each of these emails, but refused to produce them on the grounds of attorney-client privilege and (except as to two emails) work product privilege. NAI argues: (1) any assertion of attorney-client privilege is waived by the initial email itself; (2) Cornelius is not a Creative employee and therefore all communications with him fall outside the attorney-client privilege; and (3) communications between NuCare and Creative are not privileged.

Because it impedes the truth-finding process, the "attorney-client privilege is strictly construed." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted). Thus, the "party asserting the privilege bears the burden of proving each essential element" of this eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* at 607-08 (citations omitted).

### 1. Waiver[2]

NAI argues that Creative's "blast email" to various participants in the beta-alanine market waived its privilege to all of the sought-after emails because it disclosed the opinions of its legal counselors. NAI bases its argument on the fact that "it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). In other words, an express waiver is found "when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)

The Court does not agree that the blast email from Creative to beta-alanine market participants constitutes an express waiver of the attorney-client privilege. Although the blast email states some of Creative's legal conclusions, there is nothing in it that contains or exposes the contents of any privileged communication with counsel. Indeed, there is nothing in the blast email that suggests that an attorney's legal opinion was even sought on the matter. Thus, NAI's argument fails at the outset. There was no waiver whatsoever, so the Court need not address whether any such waiver would be broad enough to include all the emails at issue here. Accordingly, as to that ground, NAI's motion to compel is denied.

---

[2] At the hearing on this matter on December 9, 2016, this Court explored whether Creative forfeited any response to NAI's waiver argument by failing to address it in its papers. Creative's counsel explained that he did not write about the issue because he argued about it at some length at the prior November 21, 2016 hearing. After a review of that hearing's transcript, the Court concludes that Creative did discuss the waiver argument there—albeit in a different context and concerning a different motion—and thus will not be deemed to have forfeited its response. Nevertheless, in the future, if counsel wishes to incorporate earlier statements into a response concerning later and different motions, counsel should do so explicitly.

## 2. Derek Cornelius's Employment Status

Next, NAI argues that the emails to and from Derek Cornelius cannot be privileged because he is merely an independent contractor, not Creative's employee. Creative, in turn, argues that Cornelius is a "functional employee" based on his level of interaction with the company. Creative attaches to its opposition Cornelius's affidavit, explaining his role at the company: he is an independent contractor for Creative; he is the sole individual responsible for Creative's product development and research; the board and executive listen to and follow his guidance on those matters; part of his "role as a key decision maker for Creative" includes being the "primary interface with Creative's patent and litigation counsel;" when he talks to Nolte, he is seeking legal advice on behalf of Creative; he receives compensation for these activities; Creative's business makes up about 25% of his daily work; he has worked with Creative for over twelve years; and he expects to be a Rule 30(b)(6) witness given the breadth of his knowledge.

In *United States v. Graf*, the Ninth Circuit adopted the functional employee doctrine whereby even non-employees can be covered by the attorney-client privilege. 610 F.3d 1148, 1158-59 (9th Cir. 2010). The Ninth Circuit determined that Graf, an outside consultant, was Employers Mutual's functional employee, reasoning: "Although he had no official title, Graf regularly communicated with insurance brokers and others on behalf of Employers Mutual, marketed the company's insurance plans, managed its employees, and was the company's voice in its communications with counsel." *Id.* at 1157. The Court placed special emphasis on the fact that "Graf was the company's primary agent in its communications with corporate counsel." *Id.* at 1159.

Here, Cornelius falls within the same functional employee analysis as Graf did, and thus is covered by the attorney-client privilege. Like Graf, Cornelius's affidavit establishes that he is a regular and integral part of Creative's business, especially when it comes to product development and working with patent counsel. *See also Memry Corp. v. Ky. Oil Tech., N.V.*, No. C04-03843 RMW (HRL), 2007 WL 39373, at *2-3 (N.D. Cal. Jan. 4, 2007) (concluding, based on facts less persuasive than those at hand, that a consultant was

a functional employee). NAI argues that there was little mention of Cornelius at the depositions of Creative's principals and otherwise argues this Court should disregard Cornelius's affidavit, but does not provide any of those depositions or any contrary evidence to rebut Cornelius's sworn testimony. Accordingly, the Court concludes that Cornelius is Creative's functional employee, is covered by the attorney-client privilege, and—since this ground and the waiver ground adjudicated above are the only bases offered to compel his emails—NAI's motion to compel production of the 102 Cornelius emails is denied.

### 3. NuCare and the "Common Interest" Doctrine

Finally, NAI argues that the email from a Creative employee to a NuCare employee is not privileged, because it is not a communication drafted to or from an attorney and Creative has admitted that no explicit agreements exist with third parties relating to this litigation. Creative, in turn, argues that the "common interest" doctrine applies. *See United States v. Gonzalez*, 669 F.3d 974, 978-79 (9th Cir. 2012) (explaining the "common interest" extension of the attorney-client privilege). In short, the common interest doctrine holds that two parties with the same interest or potential interest in litigation can exchange legal communications and notes without those things becoming unprivileged. *See id.* at 978 ("[P]ersons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.") (formatting and quotation marks omitted). The common interest doctrine requires a joint defense agreement, but "it is clear that no written agreement is required." *Id.* at 979. Instead, "a JDA may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *Id.*

Nevertheless, although Creative *asserts* there is a common interest between NuCare and itself, there is no declaration or other evidence in the record that would support that position. For instance, the Court was not provided a copy of the email to review *in camera*. As mentioned above, it is Creative's burden to support its assertion of privilege, *Ruehle*,

8

583 F.3d at 608, and it has not done so. Similarly, although Creative contended in its privilege log that the work product doctrine shielded that communication, there has been no showing to justify assertion of that privilege where the email is written by a non-attorney to a non-attorney. Creative has not explained how the email implicates any attorney work product. Accordingly, the portion of NAI's motion to compel production of that document—Entry 9 in the amended privilege log—is granted. Creative shall produce that document by January 3, 2017.

### III. CONCLUSION

Creative's motion for a protective order [Doc. 54] is granted as to the deposition of Nelson Nolte and his firm, and was previously denied on all other grounds. NAI's motion to compel [Doc. 82] is granted as to Entry 9 of the amended privilege log and otherwise denied. NAI's motion for a protective order [Doc. 49] was previously granted at the November 21, 2016 motion hearing.

It has come to the Court's attention that, despite the prior adjudication of all other motions concerning depositions, those depositions have not proceeded. All remaining depositions must occur by February 17, 2017. Expert discovery will be modified such that designations *and* disclosures of initial experts are due by March 13, 2017. Rebuttal or contradictory expert designations and disclosures are due by March 27, 2017. Expert discovery shall now close on April 14, 2017. All pretrial motions are now due by May 15, 2017. All other dates in the Court's original scheduling order remain in effect.

Dated:  December 16, 2016

_____
Hon. Andrew G. Schopler
United States Magistrate Judge